```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

   RICHARD K. POWELL,

                     Plaintiff,

                                        Civil No. 12-7865(NLH)
   v.
                                        **OPINION**
   CAROLYN W. COLVIN, ACTING
   COMMISSIONER OF SOCIAL
   SECURITY ADMINISTRATION,

                     Defendant.


**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
102 BROWNING LANE, BLDG C-1
CHERRY HILL, NJ 08003

   *On behalf of Plaintiff*

MONIKA K. PROCTOR
OFFICE OF THE US ATTORNEY
SOCIAL SECURITY ADMINISTRATION
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278

   *On behalf of Defendant*

**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Supplemental Security Income ("Social Security benefits")

under Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, August 28, 2008. For the reasons stated below, this Court will reverse and remand, in part, and affirm in part.

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income claiming that as of August 28, 2008, he suffered from depression, arthritis pain in the right side of his body, including his right knee, and residual chronic pain and loss of manual dexterity in his right hand. The middle finger on his right hand had been surgically re-attached after being severed in an accident. Plaintiff completed two years of college and was previously employed as a plumber's helper.

Plaintiff's claim was denied on April 6, 2009, and denied on reconsideration on June 22, 2009. A hearing before the ALJ was held on February 23, 2011, in which Plaintiff was represented by counsel. After the hearing, the ALJ determined that Plaintiff was under a disability, but that a substance use disorder was a contributing factor material to the determination

2

of disability.  The ALJ found that absent substance abuse, the Plaintiff was not disabled under the Social Security Act.

Plaintiff appealed the decision.  The Appeals Council reviewed the ALJ's decision, and upheld it, thus rendering it as final.  Plaintiff now seeks this Court's review.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same

3

determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

4

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

5

### B. Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

6

    2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

    3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

    4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

    5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. <u>See</u> <u>id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has

7

proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.  Analysis

Plaintiff argues that the ALJ erred in finding his past drug use a material factor contributing to the determination of disability, and that the ALJ erred in misapplying SSR 96-5p to Dr. Goldstein's medical source statement.  The Court finds that there is insufficient evidence in the record to support a finding that Plaintiff had a substance use disorder after his alleged onset date of disability and, therefore, shall remand to the ALJ for clarification of Plaintiff's history of substance use.  However, with regard to Dr. Goldstein's opinion, the Court finds no error in the ALJ's refusal to consider Dr. Goldstein's opinion regarding Plaintiff's ability to work as that is a decision reserved to the ALJ.

### 1.  Plaintiff's Substance Use

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff had

8

the following severe impairments: a right third finger injury 15 years ago, a depressive disorder and a substance use disorder (Step Two).  The ALJ then found that Plaintiff's mental impairment, including his substance abuse disorder, met the medical equivalence criteria.  The ALJ concluded that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities and, therefore, would continue to have a severe impairment or combination of impairments.  However, if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that met or medically equals any of the listed impairments (Step Three). Particularly, the ALJ found that without substance use, the Plaintiff had no more than mild limitations in terms of his activities of daily living, moderate limitations in social functioning, and moderate limitations in maintaining concentration, persistence and pace.

At Step Four, the ALJ found that even though Plaintiff worked in the past as a plumber's helper, this work did not reach substantial gainful activity levels, did not meet the "earnings" requirement and, therefore did not qualify as "past relevant work" under the Social Security Act.

9

At Step Five, the ALJ determined that if Plaintiff stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he would be able to perform simple, routine and repetitive tasks, with no interaction with the public.  The ALJ concluded that if Plaintiff stopped the substance abuse, considering his age, education, work experience and residual functional capacity, there would be a significant number of jobs in the national economy that the Plaintiff could perform, such as laundry classifier, hand packager, and hospital cleaner.

The first issue to be decided on this appeal is whether the ALJ erred in determining that Plaintiff's substance use was a contributing factor material to the determination of disability. The Court finds that there is insufficient evidence to support a finding that Plaintiff had a substance use disorder after the onset date of disability and, therefore, shall remand this case.

In defining "disability", federal law states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

42 U.S.C. § 423 (d)(2)(C).  Therefore, if there is evidence of substance use, the ALJ must evaluate the disability independent of the substance use.  If a claimant's limitations are not disabling after eliminating the substance use related factors, the substance use is a material factor and the claimant is not eligible for benefits.  However, if the limitations remain disabling without the substance use, the claimant is eligible for benefits.

Here, the ALJ determined that Plaintiff had a substance use disorder which was a contributing factor material to the determination of disability.  The ALJ determined that without the substance use, Plaintiff's depression would result in moderate limitations in terms of social functioning and concentration, persistence or pace, and result in mild limitations in terms of activities of daily living.[1]  In making this determination, the ALJ relied on the testimony of Dr. Ramon O. Fortuno, a Board-certified psychiatrist, to whose opinion he gave great weight.  The Plaintiff argues that the ALJ's reliance on Dr. Fortuno's testimony was in error because Dr. Fortuno was under the mistaken assumption that Plaintiff used drugs after

---

1 The ALJ also found that Plaintiff's finger injury did not meet or medically equal any listed impairment.  Plaintiff does not refute this finding.

the onset date.  Dr. Fortuno testified that the medical records indicated that Plaintiff continued to use cocaine, marijuana, LSD and alcohol.  A review of the hearing transcript shows that when questioned by the ALJ whether Plaintiff stopped using substances, Dr. Fortuno answered there was no evidence of any drug rehabilitation or treatment, and stated that Plaintiff's use of drugs and alcohol was a contributing factor material to his impairment.  The ALJ asked a second time if there was any evidence that Plaintiff stopped using drugs and Dr. Fortuno responded that there were notes from Family Services in 2009 that he was taking certain prescription drugs, but no indication of drug abuse, and that notes in 2010 also reflect that Plaintiff did not use drugs.  The ALJ concluded that Plaintiff had a substance use disorder.

    Other than Dr. Fortuno's conflicting testimony, however, there is little to support this conclusion.  Rather, there is evidence that indicates that Plaintiff stopped smoking cocaine and marijuana in 2007.  Although, Plaintiff admitted to having a glass of wine at Thanksgiving, he testified that he is "not a drinker anymore."  Plaintiff also testified that he stopped doing drugs and alcohol between four to six years before the hearing in 2011, which suggests that he stopped prior to the

12

onset date of disability. Therefore, there is insufficient evidence cited to support a finding that Plaintiff used substances after his alleged onset date of disability on August 28, 2008.

Despite the fact that the ALJ found that Plaintiff had a substance use disorder, he was still required to undergo an analysis as to whether Plaintiff would still be disabled, absent any substance use disorder. The ALJ did this and gave a detailed analysis and properly completed each step. However, it is not clear whether the ALJ considered Plaintiff's level of depression to be affected by current drug use or whether without the drugs his depression might improve.[2] In other words, it is unclear if in viewing Plaintiff's medical records concerning Plaintiff's depression the ALJ assumed Plaintiff was still using

---

2 In addition to Dr. Fortuno's testimony, the ALJ also relied on records from Family Service of Burlington County and found they did not indicate that Plaintiff's mental condition was more than mild-to-moderate in severity. At Family Service, Plaintiff was diagnosed with a mild major depressive disorder after a few months of treatment. The ALJ states that a consulting psychologist, Dr. Waters, diagnosed Plaintiff with a dysthymic disorder (chronic low-level depression) and moderate limitations. The ALJ also considered Plaintiff's testimony that although he testified he did not read anymore, listen to the radio, and had no friends, he also testified that he watched television and attended a place of worship, that he was able to attend to his personal care and hygiene independently, use public transportation, go shopping, manage money and read.

drugs which exacerbated his depression as testified to by Dr. Fortuna.[3] The fact that the ALJ found a substance abuse disorder suggests that he considered Plaintiff's depression to be affected by substance abuse and not Plaintiff's typical mental state.

Whether the ALJ considered Plaintiff to be abusing substances comes into play in assessing Plaintiff's residual functional capacity. The ALJ concluded that if Plaintiff stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels, with certain limitations. Again, although the ALJ gave a detailed analysis, it is not clear whether he considered Plaintiff's limitations in social functioning and activities of daily living to be due in part to substance use. The ALJ relied on Dr. Fortuno's testimony that if Plaintiff "stopped the substance use" his remaining depression would result in moderate limitations in social functioning and mild limitations in activities of daily living. This suggests that the ALJ may have considered that Plaintiff was using substances which

---

[3] The ALJ stated that Dr. Fortuno testified that the Plaintiff's "substance use disorder is a contributing factor material to the nature and severity of his depressive disorder" and that if the Plaintiff "stopped using drugs and alcohol, his mental impairment would only result in moderate limitation."

14

detrimentally affected his social functioning and activities of daily living so that if Plaintiff were not using such substances, his abilities would improve, or at least would not preclude him from performing a full range of work with certain limitations.

Accordingly, this matter will be remanded for clarification as to what evidence supports a finding that Plaintiff used substances after the onset date of disability.  If the ALJ determines that the records do not support a finding of substance use after the disability date, then the ALJ should provide an opinion as to whether Plaintiff's remaining impairments are severe and meet or medically equal the listed impairments, and if Plaintiff would have the residual functional capacity to perform certain work.[4]

### 2. Opinion of Dr. Goldstein

---

[4] Defendant makes the argument that even if the ALJ erred in considering Plaintiff's past substance use, that such error is harmless because the ALJ properly concluded that Plaintiff's mental impairment was not disabling absent substance use.  This argument, however, ignores whether the ALJ viewed Plaintiff's mental impairments as affected by substance use so that "absent substance use" he would not be disabled.  It may be that the ALJ comes to the very same conclusion on remand that he did in his original opinion, i.e., that plaintiff has the residual functional capacity to perform a range of work with certain limitations.  It is for the ALJ, however, to make that determination.

15

The second issue before the Court is whether the ALJ erred in applying SSR 95-5p[5] to Dr. Goldstein's medical source statement regarding Plaintiff's ability to work. Dr. Jack Goldstein was Plaintiff's treating physician. Plaintiff argues that Dr. Goldstein's opinion that Plaintiff's impairments would cause him to miss work is an opinion as to the severity of the Plaintiff's functional limitations and not an opinion as to Plaintiff's ability to work.

The ALJ did not misapply SSR 96-5p to Dr. Goldstein's medical source statement. The ALJ stated that he would not consider Dr. Goldstein's statement about Plaintiff's ability or

---

[5] SSR96-5p is entitled: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner. This ruling states that "[u]nder 20 CFR 404.1527(e) and 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." Examples of such issues include "(1) Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings; (2) What an individual's RFC is; (3) Whether an individual's RFC prevents him or her from doing past relevant work; (4) How the vocational factors of age, education, and work experience apply; and (5) Whether an individual is "disabled" under the Act. "The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner." See http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html.

16

inability to work.  Since a conclusion as to the Plaintiff's ability to work is a determination reserved to the ALJ, there is no error.[6]  See Zonak v. Commissioner of Social Sec., 290 Fed.Appx. 493, 497 (3d Cir. 2008) (the ALJ was not obligated to give significant weight to treating physician's opinion as to claimant's ability to work "because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.") (citing See 20 C.F.R. § 404.1527(e)(1)).

As to Dr. Goldstein's other medical opinions, the ALJ stated that he gave "significant weight" to Plaintiff's treating physicians regarding the nature and severity of the Plaintiff's impairments.  However, the ALJ noted that Dr. Goldstein was a family medicine practitioner, not a specialist in orthopedics, physical medicine, or psychiatry (the specialized fields in which Plaintiff had impairments).  The ALJ also found that Dr. Goldstein's assessment of Plaintiff's limitations were not entirely consistent with the record as a whole.  Although it is true that Social Security regulations provide that a treating

---

6 Even so, the ALJ stated that Dr. Goldstein's statement that Plaintiff was unable to work was unpersuasive because Dr. Goldstein was not a specialist and his statement was inconsistent with the preponderance of the evidence of record.  Thus, even though Plaintiff's ability to work is a determination reserved to the ALJ, the ALJ did consider Dr. Goldstein's opinion but found his opinion unpersuasive.

17

physician will be afforded controlling weight as to the nature and severity of a claimant's impairment, that weight is not automatic - only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence of record, will the treating physician's opinion carry more weight than any other doctor.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.  Further, the ALJ does not have to detail every piece of evidence in the record that he considered in making his decision, Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  Additionally, "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another," Diaz v. Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009); Posko v. Astrue, 756 F. Supp. 2d 607, 613 (D. Del. 2010).  Here, the ALJ in this case properly explained which doctors he credited and discredited and the reason why.  Accordingly, the ALJ did not err in refusing to consider Dr. Goldstein's opinion as to Plaintiff's ability to work.

## III. CONCLUSION

For the reasons expressed above, this matter shall be remanded to the ALJ for clarification of his opinion as to whether the Plaintiff had a substance use disorder after the

alleged onset date of disability and, if substance use is not a material factor, to undergo the five-step sequential process to determine whether the Plaintiff is disabled.[7]

An accompanying Order will be issued.


Date: March 31, 2014                     s/ Noel L. Hillman
                                         NOEL L. HILLMAN, U.S.D.J.

---

[7] If the ALJ concludes that although there is no evidence of substance abuse disorder after the onset date, but that Plaintiff's past history of substance use is relevant, then the ALJ shall also include such reasoning in his opinion.